**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1555
_____

CHRISTIAN HANDOKO; SWIE FENN NJOO,
                                          Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                          Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A096-264-415 & A096-264-416)
Immigration Judge: Rosalind Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 16, 2011

Before:  McKEE, Chief Judge, SMITH and GARTH, Circuit Judges

(Opinion filed: March 1, 2011)
_____

OPINION
_____

PER CURIAM

     Swie Fenn Njoo, an Indonesian citizen of Chinese ethnicity, seeks review of a

January 27, 2009 Board of Immigration Appeals (BIA) decision that reversed the

1

Immigration Judge's (IJ) grant of statutory withholding of removal under 8 U.S.C. § 1231(b)(3). For the reasons that follow, we will grant the petition for review, reverse the BIA's decision, and grant Njoo's application for withholding of removal.

## I. Background

Njoo and her husband, Christian Handoko, entered the United States in 1999 and overstayed the time permitted by their tourist visas.[1] Njoo did not file her I-589 until 2003. She conceded removability but sought asylum, statutory withholding of removal, and relief under the Convention Against Torture, based on her Chinese ethnicity and Christian religious beliefs.

At a hearing in Philadelphia, Njoo testified to having experienced physical and psychological abuse in Indonesia. Specifically, when Njoo was sixteen years old, a native Indonesian "pull[ed] up her skirt from the back and touched [her] behind." (AR 215.) When confronted by Njoo's brother shortly thereafter, the native Indonesian stated that "Chinese people deserve to be touched like that." (AR 216.) Njoo's brother was beaten by a group of seven native Indonesians, including the one who assaulted Njoo, the following day. The group also threatened to burn down Njoo's house if the incident were

---

[1] According to Njoo, "[u]p to this point, her claims . . . were heard together with those of her husband . . . However, the husband-Petitioner was ultimately granted withholding of removal by the IJ after the Board remanded his part of the case . . . Therefore even though the original Petition names both the husband and wife, it is only the wife's claims that are at issue this time." (Pet'r Br. at 2.) We agree with that synopsis, and henceforth in this opinion we will focus solely on the removal proceedings as they concern Njoo.

reported to the police. Days later, rocks were thrown at Njoo's house and someone shouted to her father: "Where are your son and your daughter? Bring them outside right now and then I will kill them." (AR 218.) After the threat on her life, Njoo moved in with her aunt, who lived "about 30 minutes [away] by car." (AR 219.) Njoo stayed with her aunt for four to five months. That same year, there was a bomb threat at Njoo's school—a private Christian academy with a predominantly Chinese student population. She left for the United States a few months after the bomb threat. At the end of her direct examination, Njoo testified to her belief that the Indonesian government is unwilling to prevent maltreatment of its ethnic Chinese population, and that the "May riot in 1998 could rehappen again and again." (AR 223.)[2]

## A. The IJ's decision

The IJ denied Njoo's application for asylum because she had "failed to establish extraordinary circumstances or changed country conditions which would bar any waiver of the one year deadline." (AR 41.) The IJ also denied Njoo's request for CAT relief. The IJ found, though, that Njoo presented credible testimony of her past mistreatment. And the IJ determined that the past mistreatment amounted to persecution. The IJ also determined that Njoo "demonstrated that [her life] or freedom of movement would be

---

[2] In addition to her testimony, Njoo provided the immigration court with the following documentary evidence: a May 2005 report from the United States Commission on International Religious Freedom; two State Department reports, one from 2005 and the other from 2002, on the topic of international religious freedom in Indonesia; a State Department human rights profile of Indonesia from 2002; and several articles describing religious strife between Muslim and Christian Indonesians.

threatened in Indonesia on account of [her] ethnicity, Chinese, and/or religion." (AR 45.) Specifically, the IJ found that "[t]here's a clear probability [that] a sexual assault would reoccur, that there would continue to be a necessity to disguise one's appearance when traveling around the cities, to prevent harm on account of [Njoo's] ethnicity." (AR 46.)

In addition, the IJ determined that there exists a pattern or practice of persecution of ethnic Chinese Indonesians. The IJ explained that "[w]hile the Government may be willing to stop harassment and persecution of ethnic Chinese in Indonesia, it appears that [it is unable to do so]." (AR 46.) The IJ commented that, "[f]or several reasons, it is impossible to control the actions of people who wish to attack people on account of their race or religion, but also because of the fear that the ethnic Chinese have in reporting these incidents, the fear of revenge." (AR 46.) The IJ found that many "discriminatory laws still remain on the books." (AR 44.) Thus, the IJ held that Njoo was entitled to statutory withholding of removal. The Government appealed.

## B. The Government's brief

The IJ's decision rested on three pillars, each of which provided an independent and sufficient basis for granting statutory withholding of removal: (1) a determination that Njoo suffered past persecution; (2) a determination that Njoo was likely to be targeted for individual persecution if she were removed; and (3) a determination that, if removed, Njoo was likely to suffer persecution due to a pattern or practice of persecution of ethnic Chinese Indonesians. In its brief filed with the BIA, the Government sought to refute all three bases. The Government first took issue with the IJ's past persecution

4

analysis, arguing that Njoo's mistreatment in Indonesia was neither persecutory nor on account of her ethnicity or religion. The Government claimed next that, "even assuming *arguendo* that [Njoo] did establish past persecution, the changed country conditions documented in the Country Reports and Religious Reports adequately rebut the presumption against future [persecution]." (AR 68.) The Government rejected the notion the Njoo was likely to be targeted for persecution upon removal, primarily because "relocation [within Indonesia] is a viable option." (AR 69.) Finally, the Government disputed the IJ's determination that there exists a pattern or practice of persecution of ethnic Chinese Christians in Indonesia, citing, for example, the availability of "publications and Chinese music." (AR 71.)

### C. The BIA's decision

Though it did not disturb a single one of the IJ's factual findings, the BIA sustained the Government's appeal. The BIA concluded that "credibility is not at issue in this appeal." (AR 5.) The BIA affirmed the IJ's finding that Njoo's "past harm in Indonesia was on account of [her] Chinese ethnicity." (AR 5-6.) However, the BIA agreed with the Government that, as a matter of law, "the harm experienced by [Njoo] was not sufficiently severe to constitute persecution." (AR 6.) The BIA reasoned that the incidents complained of by Njoo "involved no physical harm." (AR 6.)

The BIA also determined, apparently as a matter of law, that Njoo could not show that prospective individual persecution was likely, citing the arguments made in the Government's brief. In addition, the BIA rejected the IJ's determination "that the threat

5

of harm to the Chinese Christians in Indonesia by the government, or by forces that the government is unable or unwilling to control, is so systemic, pervasive, or organized as to amount to a pattern or practice of persecution." (AR 7.) The BIA noted that, "[w]hile there is evidence indicating that ethnic Chinese in Indonesia suffer from second class discriminatory restrictions, and that Chinese are subject to random acts of violence in Indonesia by extremist groups, we do not find evidence that such practices are so systemic, pervasive, or organized as to demonstrate a pattern or practice of persecution against Chinese Christians in Indonesia." (AR 7.) Accordingly, the BIA ordered that Njoo be removed to Indonesia, and this petition for review followed.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. §1252(a)(1), and we limit our review to the administrative record and the decision of the BIA. See Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) ("Where the BIA renders its own decision . . . we review the BIA's decision, not that of the IJ."). "We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010) (internal citations omitted). We use the same 'substantial evidence' standard in assessing the quantum of evidence used to support an agency determination as to withholding of removal. See INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). However, "we review the BIA's legal conclusions de novo, including both pure questions

6

of law and applications of law to undisputed facts." <u>Rranci v. Att'y Gen.</u>, 540 F.3d 165, 171 (3d Cir. 2008).

## III. <u>Discussion</u>

The Immigration and Nationality Act prohibits the Attorney General from removing an alien to a country where her life or freedom would be threatened on account of a protected characteristic. <u>See</u> 8 U.S.C. § 1231(b)(3)(A). Eligibility for relief under § 1231(b)(3)(A), can be demonstrated in one of three ways: by demonstrating (1) past persecution on account of a protected ground, which creates a rebuttable presumption of future persecution; (2) that, in the absence of past persecution, she will likely be singled out individually for persecution on account of a protected ground if removed; or (3) that, in the absence of past persecution, she is included in a group of persons who are the target of a pattern or practice of persecution on account of a protected ground, such that future persecution in the country of intended removal is likely. <u>See</u> 8 C.F.R. § 1208.16(b)(1)(i), (b)(2). "Unlike asylum, withholding of removal is a *mandatory* remedy; once an alien carries his or her burden to establish a clear probability of persecution on account of an enumerated ground, the Attorney General must grant the relief." <u>Long Hao Li v. Att'y Gen.</u>,--- F.3d ---, 2011 WL 294037, at *3 (3d Cir. Feb. 1, 2011, No. 09-4116) (emphasis in original, internal citations omitted).

Turning to the case before us, we first repeat for emphasis that the BIA found no "clear error" in any of the IJ's findings of fact. 8 C.F.R. § 1003.1(d)(3). In particular, and as Njoo rightly points out, "the Board[] did not overturn the IJ['s] determination as to

7

[the] probability of future events." (Pet'r Br. at 10.) The facts upon which the BIA's decision necessarily rests are supported by substantial evidence in the record. Huang, 620 F.3d at 379. The BIA was charged with applying the operative law to this body of undisputed facts. We conclude that the BIA erred in that charge with regard to its analysis of Njoo's individualized risk of future persecution.

The BIA's decision does not squarely address the IJ's determination that Njoo was likely to be individually targeted for persecution if removed to Indonesia. To the extent that the BIA implicitly reached that conclusion by adopting the arguments in the Government's brief before it, we find those arguments unpersuasive, and we reject the BIA's conclusion. The undisturbed findings of fact in this case, viewed in conjunction with the Indonesia background materials of record, lead to only one reasonable determination: that Njoo has met her burden to establish that, more likely than not, she will be persecuted on account of her Chinese ethnicity should she be removed to her native Indonesia. The BIA thus erred in sustaining the Government's appeal and reversing the IJ's grant of withholding of removal. That being the case, a remand to the BIA is not required. See Kang v. Att'y Gen., 611 F.3d 157, 168 (3d Cir. 2010).

Accordingly, Njoo's petition for review will be granted, the BIA's decision will be reversed, and Njoo's application for withholding of removal under 8 U.S.C. § 1231(b)(3), will be granted. [3]

_____

[3] Given our disposition, it is unnecessary to address Njoo's other claims: that the BIA erred in rejecting the IJ's past persecution determination, and that the BIA erred in

rejecting the IJ's determination that there exists a pattern or practice of persecution of ethnic Chinese Indonesians.